IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–00917–REB–KMT

DENVER URBAN HOMESTEADING, LLC,

     Plaintiff,

v.

DERVAES INSTITUTE,
JULES DERVAES, and
MIGNON RUBIO DERVAES,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**Magistrate Judge Kathleen M. Tafoya**

     This matter comes before the court on "Defendants' Motion to Dismiss Or, In the Alternative, Motion to Transfer for Inconvenient Forum" (Doc. No. 13 [Mot.], filed May 28, 2013).  Plaintiff filed its response on June 4, 2013 (Doc. No. 14 [Resp.]), and Defendants filed their reply on June 25, 2013 (Doc. No. 20 [Reply]).  The motion is ripe for recommendation and ruling.

## I.  FACTUAL BACKGROUND

     The following allegations are taken from Plaintiff's Complaint.  (Doc. No. 1 [Compl.].) This case involves a dispute regarding the federally registered trademark owned by Defendant, a California company called the Dervaes Institute (the "Institute") for the mark "Urban Homesteading," USPTO Registration No. 3,633,366.  (*Id.*, ¶¶ 16, 20, 23.)  Plaintiff, a for-profit

company that operates Denver's first and only year-round, indoor farmers' market, represents itself in the internet on a website www.denverurbanhomesteading.com and previously on a Facebook fan page called Denver Urban Homesteading.  (*Id*., ¶¶ 10, 13.)

On February 12, 2010, Plaintiff sent an email to one of Defendants' companies requesting permission to republish an article on one of its websites.  (*Id.*, ¶ 25.)  On March 7, 2010, a representative of the Institute declined permission for Plaintiff to use the article.  (*Id.*, ¶ 26.)  Nearly a year later, on February 14, 2011, Plaintiff's Facebook fan page became inaccessible to Plaintiff and to the public.  (*Id.*, ¶ 32.)  On February 15, 2011, Plaintiff came to believe that one or more of the defendants was responsible for the disappearance of its Facebook page.  (*Id.*, ¶ 34.)  On February 15, 2011, Plaintiff sent communications to Defendants demanding that they authorize Facebook to re-enable Plaintiff's fan page.  (*Id.*, ¶ 35.)  Defendant Mignon Rubio Dervaes responded by email that she caused the Facebook page to be disabled on behalf of Defendant Jules Dervaes.  (*Id.*, ¶ 36.)  On February 16, 2011, Facebook advised Plaintiff it "received a claim of alleged rights infringement regarding the removed content."  (*Id.*, ¶ 38.)  Plaintiff made several more demands to Defendants to authorize Facebook to re-enable its page and explained that it was being damaged by the loss of the page.  (*Id.*, ¶¶ 40–42.)  Several days after February 14, 2011, Plaintiff received a cease and desist letter from the Institute.  (*Id.*, ¶ 38.)  Plaintiff believes the defendants chose to request that Facebook disable Plaintiff's page without any notice because Defendants wanted to cause harm to Plaintiff.  (*Id.*, ¶¶ 43–45.)

On April 11, 2011, Plaintiff filed a cancellation proceeding in the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office for the mark "urban

homesteading." (*Id.*, ¶ 59.)  The TTAB action is still proceeding.  (*Id.*, ¶¶ 63, 65.)  Plaintiff filed

this action to obtain injunctive relief in the form of an order requiring Defendants to cause

Plaintiff's Facebook page to be restored and to obtain damages.  (*Id.*, ¶ 72.)

## II. LEGAL STANDARDS

**A.     *Personal Jurisdiction***

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss

a complaint for "lack of jurisdiction over the person."  Fed. R. Civ. P. 12(b)(2).  Plaintiff bears

the burden of establishing personal jurisdiction over Defendants.  *OMI Holdings, Inc. v. Royal*

*Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998).  In the preliminary stages of litigation, Plaintiff's

burden is light.  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  Where, as here,

there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction

is decided on the basis of affidavits and other materials, Plaintiff need only make a *prima facie*

showing that jurisdiction exists.  *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent

proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate

pleading."  *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).  The allegations in

Plaintiff's complaint " 'must be taken as true to the extent they are uncontroverted by

[Defendants'] affidavits.' "  *Wenz*, 55 F.3d at 1505 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d

143, 145 (10th Cir. 1992)).  If the parties present conflicting affidavits, all factual disputes must

be resolved in Plaintiff's favor, and "plaintiff's *prima facie* showing is sufficient notwithstanding

3

the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pleaded facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process. *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992). Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state." Colo. Rev. Stat. §§ 13-1-124(1)(a)-(b) (2007). To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

**B.      *Failure to State a Claim***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6)

(2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff."  *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 1949–51.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 1951.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a

5

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

### III. ANALYSIS

Defendants move to dismiss Plaintiff's claims for lack of personal jurisdiction and as barred by the statutes of limitations.

*A.*     *Personal Jurisdiction*

Defendants argue that Plaintiff's claims against them must be dismissed because this Court lacks personal jurisdiction over the defendants.  In a diversity action, a federal court has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long-arm statute and if jurisdiction does not violate the due process clause of the Fourteenth Amendment. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1074–75 (10th Cir. 2004).  The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process. *See Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir.2005); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).

### i.       Specific Jurisdiction

For specific jurisdiction, the defendant must have sufficient minimum contacts with the forum state, and jurisdiction over the defendant cannot offend "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987).  The minimum contacts must show that "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Id.* at 109 (quotations omitted).  The contacts with the forum must make being sued there foreseeable so that the defendant could "reasonably anticipate" the suit.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  For the court to have specific jurisdiction over an out-of-state defendant, the minimum contacts standard "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  "One way to conduct the [purposeful direction] analysis in tort cases is to consider the 'effects test' of *Calder v. Jones,* 465 U.S. 783 (1984), where purposeful direction is established if three showings are made:  the defendant (a) commits 'an intentional action'; (b) that is 'expressly aimed at the forum state'; (c) with 'knowledge that the brunt of the injury would be felt in the forum state.' " *Grynberg v. Ivanhoe Energy, Inc.,* 490 F. App'x 86, 96 (10th Cir. 2012) (quoting *Dudnikov,* 514 F.3d at 1072).  "[T]he forum state itself must be the 'focal point of the tort.' " *Dudnikov*, 514 F.3d at 1074 n.9 (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1080 (10th Cir.1995)).

### a.      *Intentional Action*

In *Dudnikov*, the plaintiffs alleged that the defendants intentionally sent a letter to eBay to notify eBay of plaintiffs' copyright infringement, and eBay terminated the plaintiffs' eBay auction. *Dudnikov*, 514 F.3d at 1068, 1073.  The plaintiffs alleged that the defendants took this action with the intent of terminating the plaintiffs' auction, causing the plaintiffs' lost business and a damaged business reputation. *Id.* at 1073.  The plaintiffs also alleged that defendants took this action on the basis of an erroneous copyright claim, and that defendants were well aware of this fact. *Id.*  The *Dudnikov* court found that these allegations met the "intentional action" prong of the purposeful direction test.[1]

Here, Plaintiff alleges the defendants intentionally contacted Facebook to notify Facebook of Plaintiff's trademark infringement, and Facebook terminated Plaintiff's Facebook page. (Compl., ¶¶ 32, 34, 28.)  Plaintiff also alleges that the defendants took this action with the intent of terminating Plaintiff's Facebook page in order to cause serious harm to Plaintiff. (*Id.*, ¶¶ 43, 44, 45.)  Plaintiff alleges the loss of its Facebook page has had a serious impact on its operations. (*Id.*, ¶ 54.)  Thus, just as in *Dudnikov*, these allegations meet the "intentional action" prong of the purposeful direction test.

---

[1]The *Dudnikov* court noted that it did not need to decide whether *Calder* required some from of "wrongful" intentional conduct because the plaintiffs' complaint complied regardless. *Dudnikov*, 514 F.3d at 1073.

### b.    Expressly Aimed at the Forum State with Knowledge That the Brunt of the Injury Would Be Felt in the Forum State

Defendants argue that Colorado is not the "focal point" of the alleged torts.  In support of this argument, defendants argue that Plaintiff alleges in its Complaint that the defendants complained to Facebook about sixteen parties with Facebook pages that used either "urban homestead" or "urban homesteading" in their names, and Facebook disabled all of the pages. (Compl., ¶ 39.)  Plaintiff argues that the Court has specific jurisdiction because "Defendants shut down Plaintiff's Facebook page knowing that Plaintiff operates its market in Denver, Colorado and that it would be harmed without its page."  (Resp. at 6.)

In *Dudnikov*, the plaintiff specifically alleged in their complaint that the defendants knew the location of their business in Colorado.  *Dudnikov*, 514 F.3d at 1076.  Though Plaintiff in this case did not specifically plead that Defendants knew Plaintiff's business is in Colorado, the Complaint does allege that its Facebook page was called Denver Urban Homesteading.  (Compl., ¶ 13.)  Moreover, Defendant Jules Dervaes states in his affidavit in support of the motion to dismiss that, on February 15, 2011, the day after Plaintiff's Facebook page was disabled (Compl., ¶ 32), he sent a letter to Plaintiff at its Denver, Colorado, address.  (Mot., Ex. A [Dervaes Aff.], ¶ 15 & Ex. 1.)  Thus, it is clear Defendants were aware of Plaintiff's location.

Defendants also argue that Defendant Mignon Rubio did not "expressly aim" any conduct at Colorado, but rather she simply followed Facebook's protocol and reported that the plaintiff was not authorized to use the registered service mark owned by the Institute.  (Mot., Ex. B [Rubio Aff.],¶ 14.)  In *Dudnikov*, the court rejected the defendants' same argument, finding

that though the "defendants intended to the send the [notice of infringement] to eBay in California, but they did so with the ultimate purpose of cancelling plaintiffs' auction in Colorado." *Dudnikov*, 514 F.3d at 1075.

As in *Dudnikov*, there is no meaningful dispute that the brunt of plaintiff's alleged injury was suffered in the forum state and that the defendants knew the brunt of the injury would be felt there. *Dudnikov*, 514 F.3d at 1075–77. Therefore, Plaintiff also meets these prongs of the purposeful direction test.

### c.    *Arising Out Of*

The court next must determine whether Plaintiff's injuries "arise out of" defendants' contacts with the forum jurisdiction. *Dudnikov*, 514 F.3d at 1071. Defendants argue that Plaintiff's claims do not arise out of or result from action by the Defendants themselves that create a connection with Colorado.

In *Dudnikov*, the court determined the plaintiff's cause of action arose from the defendants' conduct in Colorado and explained:

> That defendants' contact with Colorado, the sending of the [notice of infringement] to eBay and the ensuing e-mail exchange in which defendants threatened plaintiffs with suit, is a but-for cause of this action is clear. After all, if defendants had not claimed that plaintiffs were infringing their copyright, plaintiffs would have had no reason to seek a declaratory judgment that their actions did not run afoul of defendants' rights. The [notice of infringement] was also the cause in fact of the real world harm that plaintiffs seek to have remedied: the cancellation of their auction and the black mark on their eBay record. In the absence of the [notice of infringement], plaintiffs would not have had to contend with either of those effects, and thus would have had no reason to attempt to hale defendants into court.

*Id.* at 1079.  Here, the court finds the defendants' sending the notice of infringement to Facebook and Defendant Jules Dervaes's letter to Plaintiff regarding the trademark is a but for cause of this action.  As in *Dudnikov*, if the defendants had not claimed Plaintiff was infringing on their trademark, Plaintiffs would not have had to file their case in this Court.  Moreover, Defendants' notice to Facebook was the cause in fact of the alleged harm that Plaintiff seeks to have remedied.

### d.    *Fair Play and Substantial Justice*

Finally, this court must determine whether the exercise of personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316 (internal quotation omitted).  Courts traditionally consider these factors:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states ] in furthering fundamental social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095.  To prevail, Defendants " 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " *Pro Axess*, 428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 477).

The court finds the Defendants have not made the requisite showing in this case. As to the first factor, Defendants argue that to defend this action in this Court would be extremely burdensome on them because their day-to-day duties require them to spend their time in Pasadena, California, working at the family's income-producing businesses and home.  (Mot., Ex. A, ¶ 12; Ex. B, ¶ 12.) "Certainly, 'in this age of instant communication,' and modern

11

transportation, the burdens of litigating in a distant forum have lessened." *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212–13 (10th Cir. 2000) (quoting *Republic of Pan. v. BCCI Holdings (LUXEMBOURG) S.A.*, 119 F.3d, 935, 947–48. n. 6 (11th Cir.1997)). The court does not find that defending litigation in Colorado would be so inconvenient for Defendants that it would preclude the exercise of personal jurisdiction. Indeed, the court notes that Defendants obtained local counsel to handle this matter. It is not unreasonable to require Defendants to continue to defend themselves in the forum state.

As to the second factor, "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc.*, 149 F.3d at 1092. Thus, Colorado has an interest in providing a forum in which Plaintiff can seek redress. The third factor weighs in Defendants' favor because the court sees no reason Plaintiff could not effectively pursue its claim in California.

The fourth factor in the reasonableness inquiry examines whether the forum state is the most efficient place to litigate the dispute. Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation. *OMI Holdings, Inc.*, 149 F.3d at 1097. At this point, the court is not persuaded that Defendants have shown that this Court would not be as efficient as a California court. The question of which jurisdiction's law applies is yet to be determined, and witnesses are located in both California and Colorado. Therefore, this factor is neutral.

12

Finally, the court considers the interests of California in addition to the forum state in advancing fundamental substantive social policies.  The court has no reason to believe that either state's fundamental substantive social policies will be adversely affected by this case, wherever it may be tried.  Accordingly, the court finds that this factor is neutral.

In sum, the court finds the factors weigh in favor of the plaintiff and does not find that the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice.

**B.      Statute of Limitations**

Defendants also move to dismiss Plaintiff's claims as barred by the applicable statutes of limitations.  (Mot. at 4.)

**i.       First Through Sixth Claims for Relief**

Plaintiff's first six claims are based on the allegations that the defendants obtained their trademark by fraud on the Patent and Trademark Office.  (*See* Compl., ¶¶ 73–122.)  Defendants argue that because the claims are brought under 15 U.S.C. § 1120, Civil Liability for False or Fraudulent Registration, and there is not any statute of limitations prescribed in the federal statute, Colorado's two-year statute of limitations applies.  *See* Colo. Rev. Stat. § 13-80-102(1)(g) (the statute of limitations for all actions created by a federal statute where no period of limitations is provided is two years).  Plaintiff responds that in *Full Draw Productions v. Easton Sports, Inc.*, 85 F. Supp. 2d 1001, the court held that Colorado's three-year statute of limitations under § 13-80-101(c) applies to fraud claims brought under the Lanham Act.  *Full Draw*, 85. F. Supp. 2d at 1011.

13

Defendants reply that, because the crux of the first six claims is a fraud on the Patent and Trademark Office, and because there is no comparable tort under Colorado law, this is a case where the default two-year statute of limitations applies.  However, in support of this argument, Defendants cite to *Squires v. Goodwin*, 829 F. Supp. 2d 1062 (D. Colo. 2011), which lists the elements to establish fraud, including that the *plaintiff* must have relied upon a misrepresentation.  *Squires*, 829 F. Supp. 2d at 1075.  (Reply at 3 [emphasis in Reply].)  Thus, Defendants imply that because Plaintiff did not rely on the misrepresentation, Plaintiff cannot satisfy all of the elements to pursue its fraud claims.  This is an argument left for another day in a separate dispositive motion, however, and has nothing to do with the statute of limitations.  It is clear from the Complaint that Plaintiff alleges the defendants perpetrated a fraud on the Patent and Trademark Office in obtaining its mark, and that Plaintiff was injured by the defendants' wrongfully obtaining the mark. Therefore, the court finds the three-year statute of limitations applies, and Plaintiff's first six claims are not time-barred.[2]

### ii.    *Claims Seven through Nine*

Plaintiff's Seventh Claim is for alleged interference with its Facebook page.  (Compl., ¶¶ 123–29.)  Plaintiff's Eighth Claim is for intentional interference with contractual or business relations.  (*Id.*, ¶¶ 130–41.)  Plaintiff's Ninth Claim is for interference with prospective business/economic advantages.  (*Id.*, ¶¶ 142-54.)  Defendants argues these tort claims are subject

---

[2]There is no argument by either party concerning when the statute accrued as to these six claims.  However, the defendants do not argue that, if the court applies a three-year statute of limitations, the plaintiff's claims still are barred.

to a two-year statute of limitations.  In Colorado, tort actions generally are subject to a two-year statute of limitations which begins to accrue when the plaintiff knew or reasonably should have known of the injury alleged.  Colo. Rev. Stat. § 13-80-102(1)(a).  Plaintiff commenced this action on April 10, 2013, and thus the tort claims must have accrued no earlier than April 10, 2011.  Here, however, the actions or omissions about which Plaintiff complains took place in February 2011, when Plaintiff knew the Facebook page had been terminated.  Thus, the Seventh, Eighth, and Ninth Claims for Relief are time barred.

Plaintiff nevertheless argues that the defendants' failure to cooperate and restore its Facebook page is a continuous action calculated to do harm.  "Colorado limits the application of the 'continuing violation' doctrine to employment discrimination cases." *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1120 (D. Colo. 2010) (quoting *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo. App. 2000)).  Therefore, this argument fails.

Accordingly, Plaintiff's Seventh, Eighth, and Ninth Claims for Relief are barred by the statute of limitations and should be dismissed for failure to state a claim upon which relief can be granted.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** that  "Defendants' Motion to Dismiss Or, In the Alternative, Motion to Transfer for Inconvenient Forum" (Doc. No. 13 ) be **GRANTED** in part and **DENIED** in part. The motion should be **GRANTED** with respect to Plaintiff's Seventh, Eighth, and Ninth Claims for Relief, which are barred by the statute of limitations and should be dismissed for failure to state a claim upon which relief can be granted, and **DENIED** in all other respects.

15

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

16

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 28th day of February, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

17